The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

July 10, 2007

**Via E-mail to:**
ctakahashi@acc-capitalholdings.com
slemmon@acc-capitalholdings.com

| | |
|---|---|
| **Via First Class U.S. Mail** | **Via Express Mail to:** |
| Ameriquest Mortgage Company | Ameriquest Mortgage Company |
| 1600 S Douglass Rd | 1100 Town and Country Road, Ste. 200 |
| Anaheim, CA 92806 | Orange, CA 92868 |

**NOTICE OF CANCELLATION OF LOAN
AND QUALIFIED WRITTEN REQUEST**

Re: Notice of Cancellation Loan Number: [redacted]
Closing date: June 10, 2004
Borrower Name: Joyce H. Williams
Enclosure #1: Undated 3 day Notice of Right to Cancel Form
Enclosure #2: Conflicting One Week Right to Cancel Form
Enclosure #3: HUD-1 Settlement Statement
Enclosure #4: Recorded Mortgage

RECEIVED
JUL 1 6 2007
OOP/COMPLIANCE

Dear Ameriquest Cancellation Officer:

I represent the above borrower by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrower has the right to cancel this Ameriquest loan, and does hereby cancel it, effective immediately. Further, the borrower demands that Ameriquest comply with its obligation to respond and repay monies within 20 days acknowledging or disputing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become liable to the borrower for actual and statutory damages pursuant to 15 U.S.C. Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrower has no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

21 South Section Street Post Office Box 969 Fairhope, Alabama 36533-0969 Voice (251) 990-5558
Fax (251) 990-0626 www.alalaw.com Email: jpatterson@alalaw.com

EXHIBIT C

The Law Offices of
# Earl P. Underwood, Jr.

---

Earl P. Underwood, Jr.
James D. Patterson

## AMERIQUEST'S FAILURE TO STATE THE DATE THE RECISSION PERIOD EXPIRED.

The borrower was not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel form provided at the closing (**Enclosure #1**) contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrower of the right to cancel three business days before the "cooling off" period expires, the borrower retains the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3).

The 5th Circuit held in Williamson v. Lafferty, 698 F.2d 767, 768-769 (5th Cir. 1983) that the failure to date the Notice of Right to Cancel gave the borrower an unqualified right to cancel:

> "Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor *shall* complete rescission form *including* date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.")

See, also, Taylor v. Domestic Remodeling, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the critical importance of the settlement agent dating the right to cancel:

> "A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. <u>The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel.</u> The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three

21 South Section Street Post Office Box 969 Fairhope, Alabama 36533-0969 Voice (251) 990-5558
Fax (251) 990-0626 www.alalaw.com Email: jpatterson@alalaw.com

# The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

(3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. All blanks must be completed or amended prior to signature. Settlement Agent must contact the Lender to confirm that the correct dates are used. You must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party."

### COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrower hereby rescinds the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. **(Enclosure #2)** Ameriquest has been subjected to liability on this very point, in Washington v. Ameriquest Mortg. Co., 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> "[T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction."

Similarly, in Handy v. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In Porter v. Mid-Penn Consumer Disc. Co., 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrower, the court noted that, where more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

21 South Section Street Post Office Box 969 Fairhope, Alabama 36533-0969 Voice (251) 990-5558
Fax (251) 990-0626 www.alalaw.com Email: jpatterson@alalaw.com

# The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

---

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a separate and independent reason for the borrower's rescission.

## LEGAL REQUIREMENT OF AMERIQUEST'S RESPONSE WITHIN 20 DAYS.

Under 12 CFR 226.23(2), Ameriquest has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest.[1] The 7th Circuit has summarized the borrower's remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fee," § 1640(a)(3). In addition, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

Handy v. Anchor Mortg. Corp., 464 F.3d 760, 765 (7th Cir. 2006). Thus, the plaintiff demands such payment.

In McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. Id. See, also, Mount v. LaSalle Bank Lake View, 886 F. Supp. 650, 651 (N.D. Ill. 1995); Elliott v. ITT Corp., 764 F. Supp. 102, 106 (N.D. Ill. 1991); Malfa v. Household Bank, F.S.B., 825 F. Supp. 1018, 1020 (S.D. Fla. 1993)).

The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area of the law:

> Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the

---

[1] 12 CFR 226.23 provides: "(d) Effects of rescission. (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

# The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399 (6th Cir. 1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999)

## ADDITIONAL DISCLOSURE VIOLATIONS

Another violation under TILA concerns inaccurate statements made by Ameriquest to the borrower in the "material disclosures" as those are defined in the Federal Truth in Lending Act, 15 U.S.C. § 1602(u)[2].

Specifically, Ameriquest used prepaid finance charges as the basis for computing the Amount Financed, the Finance Charge and the Annual Percentage Rate in the final Truth-In-Lending Disclosure Statement (TILDS) which was provided to the borrower at settlement on June 10, 2004. However, the prepaid finance charges – and thus the Finance Charge and the Amount Financed – do not comport with the HUD-1 Settlement Statement because the fees for title related services listed in the 1100 series of the settlement statement as well as the recording fee have been marked up in violation of RESPA. Regarding the recording fee, the borrower was charged $75.00 on line 1201 for the recording fee and $150.45 on line 1203 for the state tax. **(Enclosure #3)** The total recording fee for this loan was $210.95 not $225.45 as charged by

---

[2] 15 U.S.C. § 1602 (u): The term "material disclosures" means the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

21 South Section Street Post Office Box 969 Fairhope, Alabama 36533-0969 Voice (251) 990-5558
Fax (251) 990-0626 www.alalaw.com Email: jpatterson@alalaw.com

# The Law Offices of
# Earl P. Underwood, Jr.

Earl P. Underwood, Jr.
James D. Patterson

Ameriquest. **(Enclosure #4)** Furthermore it appears that the charge for title insurance may be above that allowed by Alabama law.

This difference constitutes a possible understatement of the Finance Charge which exceeds the error tolerance allowed under 15 U.S.C. § 1635 and thus affords the borrower an extended right to rescind this transaction.

This is a separate and independent reason for the borrower's rescission.

### QUALIFIED WRITTEN REQUEST

Further, please treat this letter as a "qualified written request" under the Federal Service Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). This request is made on behalf of the borrower. Specifically, we are requesting the following information:

An itemized printed payoff report;

A complete payment and transaction history for this loan;

A copy of any assignment of the mortgage, any master pooling or servicing agreement, master servicing agreement, or sub-servicing agreement that your company has with any party;

A copy of the borrower's loan file including any and all documents executed in connection with this loan.

### SUIT WILL BE FILED WITHOUT FURTHER NOTICE
### IF NO RESPONSE IS RECEIVED WITHIN 20 CALENDAR DAYS.

Suit will be filed without further notice if Ameriquest does not respond within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to respond. Please make the check returning all consideration payable to Law Offices of Earl Underwood and the borrower and mail the check to the Law Offices of Earl Underwood, 21 S. Section Street, Fairhope AL 36533.

Sincerely,

James D. Patterson, Esq.

JDP/rim
cc: Joyce H. Williams